UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE SUBPOENA DIRECTED TO | ) | |
| EPSILON INVESTMENT MANAGEMENT | ) | NO._____ |
| L.L.C. | ) | |

**EPSILON'S OPENING BRIEF IN SUPPORT OF**
**MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Richard H. Morse (No. 531)
rmorse@ycst.com
Seth J. Reidenberg (No. 3657)
sreidenberg@ycst.com
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street
The Brandywine Building, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(302) 571-6651
Attorneys for Movant

Dated: May 15, 2006

# TABLE OF CONTENTS

**PAGE NO.**

TABLE OF AUTHORITIES ............................................................................... ii

NATURE AND STAGE OF THE PROCEEDING............................................1

SUMMARY OF ARGUMENT.............................................................................1

STATEMENT OF FACTS ...................................................................................2

ARGUMENT .......................................................................................................3

     I.     THE SUBPOENA TO EPSILON SHOULD BE QUASHED FOR
          VIOLATING FED.R.CIV.P. 45 AND FED.R.CIV.P. 30(b)(6)....................3

          A.   Non-party business entities, even if incorporated in
          Delaware, may not be subpoened to testify or produce
          documents in Delaware if their principal place of business is
          more than 100 miles from Delaware..............................................3

          B.  The Subpoena Lacks a Fed.R.Civ.P. 30(b)(6) Deposition
          Notice or Any Other Indication of the Areas of Inquiry at the
          Deposition. ..................................................................................5

     II.    IN THE ALTERNATIVE, THIS COURT SHOULD ISSUE A
          PROTECTIVE ORDER WITH REGARD TO THE  DISCOVERY.........6

CONCLUSION......................................................................................................6

# TABLE OF AUTHORITIES

**PAGE NO.**

**Cases**

Hay & Forage Indus. v. Ford New Holland, Inc.,
  132 F.R.D. 687 (D. Kansas 1990).................................................................. 5

Application of Johnson & Johnson,
  59 F.R.D. 174, 178 (D. Del. 1973)................................................................1,4,5,7

Smith v. Midland Brake, Inc.,
  162 F.R.D. 683 (D. Kansas 1995)...............................................................5

**Rules**

Fed.R.Civ.P. 26(c)..............................................................................6,7

Fed.R.Civ.P. 26(c)(1)...........................................................................6

Fed.R.Civ.P. 26(c)(2)...........................................................................6

Fed.R.Civ.P. 26(c)(3)-(8).......................................................................6

Fed.R.Civ.P. 30.2 ..............................................................................7

Fed.R.Civ.P. 30(b)(6)..........................................................................2,3,5,6

Fed.R.Civ.P. 30(d).............................................................................7

Fed.R.Civ.P. 45...............................................................................1,3,4,5,6,7

Fed.R.Civ.P. 45(a)(2)...........................................................................6

Fed.R.Civ.P. 45(c)(3)(A)(ii). ..................................................................3

Fed.R.Civ.P. 45(e).............................................................................3

**Other Authorities**

4 Moore, Federal Practice § 26.70.[1.4]........................................................3

8A WRIGHT & MILLER, Federal Practice and Procedure §2103.................................5

9A WRIGHT & MILLER, Federal Practice and Procedure §2460.................................5

ii

## NATURE AND STAGE OF PROCEEDING

This matter relates to an action that was filed in, and remains pending before, the United States District Court for the District of Nevada.[1]  In that action Talisman Capital Talon Fund, Ltd. ("Talisman") has sued defendants Rudolf Gunnerman and SulphCo, Inc. over allegedly misappropriated intellectual property.  Defendants in that action have caused movant Epsilon Investment Management L.L.C. ("Epsilon") to be served with a Subpoena In A Civil Case ("Subpoena") that purports to require Epsilon to produce documents in Delaware on May 15, 2006 and to testify at deposition in Delaware on May 17, 2006.

Epsilon -- a non-party Delaware limited liability company with its sole United States office in the State of Florida -- objects to, and has moved to quash, the Subpoena to the extent that it commands Epsilon to provide deposition testimony.  Epsilon has also served objections to the Subpoena's command that it produce documents.

## SUMMARY OF ARGUMENT

1.    Epsilon is not a party in this litigation.  Although it was formed and registered as a Delaware limited liability company, to the extent Epsilon does business in the United States it does so through an office in Boca Raton, Florida, more than 100 miles from this forum.  Epsilon has no offices, documents, records, or other property in the State of Delaware other than the required registered agent due to its registration as a Delaware limited liability company.  The Subpoena thus should be quashed for violating Fed.R.Civ.P. 45's "100-mile" rule, and this court's precedent in Application of Johnson & Johnson, 59 F.R.D 174, 178 (D.Del. 1973).

---

[1] The matter presently is before the Honorable Brian E. Sandoval, under the following caption and case number: Talisman Capital Talon Fund, Ltd. v. Rudolf W. Gunnerman and Sulphco, Inc., Cause No. CV-N-05-0354-HDM-RAM.  A copy of the complaint filed in that case is attached to this brief as Exhibit A.

2.    The Subpoena also suffers from fatal procedural defects, including its lack of a Fed.R.Civ.P. 30(b)(6) notice or any other limitation on the matters on which examination will occur at the deposition. Even if the Subpoena were otherwise enforceable, it cannot be enforced without such notice because Epsilon is an entity which can only speak through appropriate designees.

## STATEMENT OF FACTS

Epsilon is not a party to the <u>Talisman Capital</u> action. <u>See</u> the Declaration of George Rudman ("Rudman Decl."), ¶¶ 3 and 5; <u>see also</u>, Exhibit A. To the extent Epsilon does business in the United States, it does so through an office in Boca Raton, Florida. Rudman Decl., ¶ 5. The company, however, was formed and is registered as a limited liability company in Delaware, and thus maintains a Delaware registered agent. <u>Id.</u>, ¶ 4. Epsilon otherwise has no offices, employees, property, or other connection to the state of Delaware. <u>Id.</u>, ¶ 4.

On April 27, 2006, defendants in the <u>Talisman Capital</u> action served Epsilon's registered agent in Delaware with the Subpoena, which had been issued by this court. <u>See</u> the Declaration of Nick Solandros ("Solandros Decl."), Ex. 1. The Subpoena commands Epsilon to produce documents and appear for deposition in Wilmington, Delaware in the next few days.[2] Solandros Decl., Ex. 1.

Defendants are also actively attempting to conduct discovery in Florida, where Epsilon does have a limited business presence. Epsilon understands that defendants have had subpoenas issued by the District Court for the Southern District of Florida for service upon current or

---

[2] Specifically, the Subpoena commands Epsilon to produce documents to counsel in Wilmington, Delaware by May 15, 2006, and to produce a witness or witnesses in Wilmington for an apparent Fed.R.Civ.P. 30(b)(6) deposition on May 17, 2006. <u>Id.</u> The Subpoena was not accompanied by a separate notice of deposition, and does not otherwise limit the areas of examination at the deposition. <u>Id.</u>

former employees of Epsilon. Defendants' efforts to serve these subpoenas reveal that they are

fully aware that Florida, not Delaware, is the appropriate jurisdiction in which to pursue

discovery directed to Epsilon.

Epsilon, for the reasons set out in this brief, respectfully requests the court to quash the

Subpoena, or, in the alternative, to grant a protective order requiring defendants to pursue

discovery directed to Epsilon through the Federal District Court in Florida.

## ARGUMENT

**I.     THE SUBPOENA TO EPSILON SHOULD BE QUASHED FOR VIOLATING FED.R.CIV.P.45 AND FED.R.CIV.P.30(b)(6).**

A.     Non-party business entities, even if incorporated in Delaware, may not be subpoenaed to testify or produce documents in Delaware if their principal place of business is more than 100 miles from Delaware.

Fed.R.Civ.P. 45(c)(3)(A)(ii) states that a court shall quash a subpoena if it:

> requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed, or regularly transacts business in person....

In the context of Fed.R.Civ.P. 45, the place a corporation "regularly transacts business" is

the corporation's principal place of business. 4 MOORE, FEDERAL PRACTICE § 26.70[1.4];

see also, Application of Johnson & Johnson, supra, 59 F.R.D. at 178.

The rule also specifies that a non-party subpoena recipient may disregard a subpoena

violating the "100 mile rule" established by Fed.R.Civ.P. (c)(3)(A)(ii):

> An adequate cause for failure to obey exists when a subpoena purports to require a non-party to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A) [of this rule].

Fed.R.Civ.P. 45(e).

DB02:5311490.1

900003.0001

Here, the Subpoena purports to require Epsilon, a non-party with its United States office in Florida, to submit to deposition and produce documents at the offices of a law firm in Wilmington, Delaware – more than 100 miles away from its office in Florida.  Solandros Decl., Ex. 1; Rudman Decl., ¶ 3.  That would violate this court's decision establishing that a non-party corporation with its principal place of business outside Delaware may not be compelled by service of a subpoena on the corporation's registered agent to produce a witness for deposition in Delaware, even when Delaware is the corporation's state of incorporation.  See Application of Johnson & Johnson, supra, at 178.

In Johnson & Johnson, deposition subpoenas directed to officers of Jordan-Delaware, a Delaware corporation with its principal place of business outside the state, were served on the corporation's registered agent in Delaware. The Jordan-Delaware officers also lived outside of Delaware.  The propounding party, Johnson & Johnson, argued the subpoenas did not violate Fed.R.Civ.P. 45 rule because they were in reality directed to Jordan-Delaware, the corporation, which was a "resident" of Delaware by virtue of its incorporation here.  This court rejected Johnson & Johnson's argument and enforced Fed.R.Civ.P. 45 by ruling  that compliance with the subpoenas was not required:

> ...Johnson & Johnson contends the subpoenas were in reality directed to Jordan-Delaware, which is a "resident" of this district by virtue of its incorporation in Delaware.  Conceding Johnson & Johnson's contention, the result remains the same. ....  The attendance of a non-party witness at a deposition can only be compelled in accordance with Rule 45. ....  Jordan-Delaware's principal place of business is in Connecticut.  Hence, even if the notices of depositions and the subpoenas had been directed to Jordan-Delaware there would have been no necessity for it to produce officers for depositions to be taken in Wilmington.

Id. at 178.

The holding in <u>Johnson & Johnson</u> is directly applicable to the situation here. Epsilon, even though formed and registered as a Delaware limited liability company, has no offices within 100 miles of Delaware and thus, under Fed.R.Civ.P. 45, may not be subpoenaed to testify in Delaware. Because Epsilon may not be subpoened to testify in Delaware, *the defendants were not entitled to have a subpoena issued by this court.* <u>See</u> Fed.R.Civ.P.45(a)(2) ("A subpoena must issue as follows: ... (B) for attendance at a deposition, from the court for the district where the deposition is to be taken".). The Subpoena thus should be quashed for violating both Fed.R.Civ.P. 45 and this court's clear precedent.

        B.      The Subpoena Lacks a Fed.R.Civ.P. 30(b)(6) Deposition Notice or Any Other Indication of the Areas of Inquiry at the Deposition.

Subpoenas to a corporate entity for deposition must be accompanied by a separate Fed.R.Civ.P. 30(b)(6) notice specifying the areas to be inquired about at the deposition. 9A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2460, <u>citing</u>, <u>inter alia</u>, <u>Smith v. Midland Brake, Inc.</u>, 162 F.R.D. 683 (D. Kansas 1995); <u>Hay & Forage Indus. v. Ford New Holland, Inc.</u>, 132 F.R.D. 687 (D. Kansas 1990); <u>see also</u>, 8A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2103 (stating, with respect to Rule 30(b)(6) depositions of non-party business entities, that: "[i]n this situation, as in any case in which it is desired to take the deposition of a non-party, a subpoena must be directed to the corporation in addition to the notice [of deposition]").

Fed.R.Civ.P. 30(b)(6) requires a party noting the deposition of a corporate entity to "describe with reasonable particularity the matters on which examination is requested," so that the recipient organization may "designate one or more...persons...to testify on its behalf...."

The Subpoena in this case was not accompanied by a separate notice of deposition, nor does the Subpoena otherwise limit the areas of inquiry permitted at the deposition. Solandros

Decl., Ex. 1. This, too, imposes an undue burden on Epsilon, and is a fatal procedural defect under both Fed.R.Civ.P. 30(b)(6) and Fed.R.Civ.P. 45.

## II.    IN    THE    ALTERNATIVE,    THIS    COURT    SHOULD    ISSUE    A PROTECTIVE ORDER WITH REGARD TO THE DISCOVERY.

Fed.R.Civ.P. 26(c) states that upon motion "by the person from whom discovery is sought":

> [t]he court in the district where the deposition is to be taken may make any order which justice requires to protect a party or a person from annoyance, embarrassment, oppression, or undue burden or expense....

This rule also specifies that such protective orders may grant different forms of relief, including but not limited to: prohibiting the discovery altogether (Fed.R.Civ.P. 26(c)(1)), specifying where and when it may be had (Fed.R.Civ.P. 26(c)(2)), and/or limiting the scope of the request and the conditions under which the requested information (whether testimony or documents) may be provided (Fed.R.Civ.P. 26(c)(3)-(8)).

Although Epsilon believes the subpoena is invalid and unenforceable for the reasons stated supra, should this court for any reason disagree Epsilon has moved alternatively for a Fed.R.Civ.P. 26(c) protective order barring discovery until service of a subpoena issued by the District Court in Florida is served in Florida, Epsilon and the defendants agree upon, or the court orders, a limitation on the subject matter of the deposition, and the court for the district in which the deposition will be taken enters an appropriate order to preserve the confidentiality of Epsilon's information.

## CONCLUSION

The Subpoena suffers from fatal procedural defects such as the lack of a Fed.R.Civ.P. 30(b)(6) notice, and would impose an undue burden on Epsilon, which is not a party to this suit,

since it commands that Epsilon submit to deposition more than 100 miles from Florida.    This is

forbidden by the plain text of Fed.R.Civ.P. 45's "100-mile" rule and this court's ruling in

Application of Johnson & Johnson, supra.  Epsilon therefore respectfully requests that the court

quash defendants' Subpoena.

Although Epsilon believes the need to quash the Subpoena is clear as a matter of law,

should this Court not agree Epsilon respectfully requests, in the alternative, a protective order

pursuant to Fed.R.Civ.P. 26(c), Fed.R.Civ.P. 30(d), Fed.R.Civ.P. 45, and Local Rule 30.2.

<div style="margin-left: 50%;">

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*Richard H. Morse*

Richard H. Morse (I.D. No. 531)
rmorse@ycst.com
Seth J. Reidenberg (I.D. No. 3657)
sreidenberg@ycst.com
1000 West Street
The Brandywine Building, 17th Floor
P.O. Box 391
Wilmington, DE  19899
(302) 571-6651
Attorneys for Epsilon Investment
Management, L.L.C.

</div>

Dated: May 15, 2006

# EXHIBIT 1

ORIGINAL

1  BRUCE T. BEESLEY, ESQ. #1164
2  TRICIA M. DARBY, ESQ. #7956
   BEESLEY, PECK & MATTEONI, LTD.
3  5011 Meadowood Mall Way, Ste. 300
   Reno, NV 89502
4  Telephone: 775-827-8666
5  Fax: 775-827-8722

6  Attorneys for Talisman Capital Talon Fund, Ltd.

7

8              UNITED STATES DISTRICT COURT
9                  DISTRICT OF NEVADA

10 TALISMAN CAPITAL
11 TALON FUND, LTD.,
                                        Case No.:
12         Plaintiff,                   Dept. No.:

13 vs.

14 RUDOLF W. GUNNERMAN AND
15 SULPHCO, INC.,                      CV-N-05-0354-HDM-RAM

16         Defendants.

17 _____

18        **COMPLAINT FOR DECLARATORY JUDGMENT,**
          **CONSTRUCTIVE TRUST AND DAMAGES**

19        Plaintiff Talisman Capital Talon Fund, Ltd., by and through its counsel Bruce T.

20 Beesley of the law firm Beesley, Peck & Matteoni, Ltd. hereby alleges as follows:

21
                            **Parties**
22

23        1.    Plaintiff Talisman Capital Talon Fund, Ltd. ("Talisman") is a company

24 incorporated under the laws of the British Virgin Islands and with its registered office in

25 Tortola, British Virgin Islands.

BEESLEY, PECK & MATTEONI, LTD.
ATTORNEYS AT LAW

LAW OFFICES OF
BEESLEY, PECK & MATTEONI
LTD
SUITE 300
5011 MEADOWOOD MALL WAY
RENO, NV 89502
775-827-8666
FAX 775-827-8722



2.    Defendant Rudolf W. Gunnerman ("Rudolf Gunnerman") is an individual domiciled in the State of Nevada, County of Washoe.

3.    Defendant SulphCo, Inc. ("SulphCo") is a corporation organized under the laws of Nevada with its principal place of business in Sparks, Nevada.

### Jurisdiction and Venue

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), as there is complete diversity of citizenship among the Talisman and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), as this is a judicial district in which all defendants reside in this state. In addition, venue is proper in this district because a substantial part of the events or omissions giving rise to Talisman's claims occurred in this district. In the alternative, venue is proper in this district because Defendants are subject to personal jurisdiction in this state.

### Facts Common to All Claims for Relief

### Talisman Acquired Rudolf Gunnerman's Intellectual Property Rights Pursuant to the "Technology Transfer and Assignment Agreement"

6.    On or about April 23, 2003, Rudolf Gunnerman and Capital Strategies Fund, Ltd ("Capital Strategies"), entered into a Technology Transfer and Assignment Agreement, which was amended on or about December 29, 2004 (as amended, the "Technology Transfer and Assignment Agreement").

7.    Capital Strategies assigned all its right, title and interest in the Technology Transfer and Assignment Agreement, and the assets assigned thereunder, to Talisman

LAW OFFICES OF
BEESLEY, PECK & MATTEONI,
LTD.
SUITE 200
5011 MEADOWOOD MALL WAY
RENO, NV 89502
775-329-5000
FAX (775) 827-9702    K:\54\54749.001\plead\Complaint.DOC          - 2 -

1   pursuant to a "Technology Transfer Assignment Agreement" between the two entities,

2   effective in or about May 2005.

3

4       8.      Under the Technology Transfer and Assignment Agreement, Rudolf

5   Gunnerman, for valuable consideration, transferred and assigned to Capital Strategies

6   (Talisman's Assignor) all of his "present and future right, title and interest in and to" certain

7   "Intellectual Property Rights," including, without limitation "all patent applications and patent

8   rights, as well as all reissues, divisionals, continuations and continuations-in-part thereof, any

9   corresponding foreign patent rights and any other patents issuing thereon or claiming priority

10  therefrom, that relate to the Field." *See* Technology Transfer and Assignment Agreement, as

11  amended, ¶ 2.1(i).

12

13      9.      In addition, pursuant to the Technology Transfer and Assignment Agreement,

14  as amended, Rudolf Gunnerman transferred and assigned to Capital Strategies (Talisman's

15  Assignor), the following:

16

17          2.1(iv)  all technical information and know-how, confidential and non-
                     confidential, that relates to the Field, including all computer
18                   software, patterns, plans, designs, research data, trade secrets,
                     formulae, drawings, instructions, manuals, data, records and
19                   other documents relating to the foregoing (collectively, the
                     "Know-How, ")(the Know-How, Copyrights, Trademarks and
20                   Patent Rights are referred to collectively as the "Intellectual
                     Property Rights"). Specifically transferred is all Know-How that
21                   relates to aqueous or fuel/oil based emulsions;

22          (v)      all license agreements, including the Exclusive License,
                     assignments of inventions and other agreements which relate to
23                   the Intellectual Property Rights;

24          (vi)     all restrictions on competition and obligations regarding
                     confidentiality pertaining to the Intellectual Property Rights
25                   imposed on third parties by Assignor; and

LAW OFFICES OF
BEESLEY, PECK & MATTEONI
TD
SUITE 200
5011 MEADOWOOD MALL WAY
RENO, NV 89502
(775) 827-8666
FAX (775) 827-8672

K:\54739.001\plead\Complaint.DOC          - 3 -

BEESLEY, PECK & MATTEONI, LTD.
ATTORNEYS AT LAW

    (vii)    all rights to enforce, claims, credits, causes of action, and rights to damages, profits or set-off whatsoever, whether known or unknown, relating to the Intellectual Property Rights.

*See* Technology Transfer and Assignment Agreement ¶ 2.1.

    10.    The term "Field," as used in the Technology Transfer and Assignment Agreement, has the meaning given it in the "Exclusive License." *See* Technology Transfer and Assignment Agreement ¶ 1.1.

    11.    The "Exclusive License" referred to in the Technology Transfer and Assignment Agreement means that certain "Exclusive License Agreement," dated January 3, 1994, and amended effective January 1, 1995, July 31, 1998, January 27, 1999 and April 30, 2001 (as so amended, the "Exclusive License"), between Rudolf Gunnerman and Clean Fuels Technology, Inc. ("CFT").

    12.    The Exclusive License defines the term "Field" as follows:

    (a)    methods, processes, compositions and apparatuses for carrying out combustion for the generation of heat in (i) internal combustion engines, either compression or spark ignited and (ii) open flame applications such as boilers and combustion turbines;

    (b)    aqueous fuels, including fuels described in the Patents, as well as (i) methods, processes, apparatuses and compositions for their production and (ii) methods, processes compositions and apparatuses for their combustion; and

    (c)    methods, processes, compositions and apparatuses used for production of chemicals, petrochemicals, plastics or pharmaceuticals utilized in connection with any of the above.

*See* Exclusive License ¶ 1.1.

LAW OFFICES OF
BEESLEY, PECK & MATTEONI,
LTD
5011 MEADOWOOD MALL WAY
RENO, NEVADA
ST. 51 827-8666
FAX 775-4 827-8722.

K:\354\54739.001\plead\Complaint.DOC    - 4 -

13.    "Patents," as used in the definition of Field, is defined to include patents and applications (existing and future) that "concern or relate to the Field," and that are owned or become owned or controlled by Rudolf Gunnerman. *See* Exclusive License ¶ 1.2.

14.    Pursuant to the Technology Transfer and Assignment Agreement, in addition to transferring the Intellectual Property Rights, Rudolf Gunnerman transferred and assigned to Capital Strategies all of his "present and future right, title and interest in and to" "all license agreements, including the Exclusive License, assignments of inventions and other agreements which relate to the Intellectual Property Rights." *See* Technology Transfer and Assignment Agreement, as amended, ¶ 2.1(v).

15.    In addition to transferring the Intellectual Property Rights and assigning his rights under the Exclusive License, Rudolf Gunnerman warranted and affirmatively represented that:

(a) "[he] owns, and has the unrestricted right to assign and transfer, the Intellectual Property Rights pursuant to the terms of this Agreement, free and clear of all Encumbrances (other than the Exclusive License)"; and

(b) "[he] does not hold any of the Intellectual Property Rights pursuant to any license, sublicense or other agreement nor has [he] granted any person or entity any rights, license, sublicense or other agreement or otherwise, to use the Intellectual Property Rights, other than pursuant to the Exclusive License."

*See* Technology Transfer and Assignment Agreement ¶ 3.3(a).

16.    Rudolf Gunnerman's warranties and representations were material to the Technology Transfer and Assignment Agreement.

BEESLEY, PECK & MATTEONI, LTD.
ATTORNEYS AT LAW

LAW OFFICES OF
BEESLEY PECK & MATTEONI
LTD.
SUITE 330
5011 MEADE WOOD MALL WAY
RENO, NV 89502
(775) 827-8666
FAX (775) 827-8672

K:\54\54739.001\plead\Complaint.DOC    - 5 -

17.   Capital Strategies (and, in turn, Talisman), relied on such warranties and representations and would not have entered into the Technology Transfer and Assignment Agreement had it known those representations were false.

### Rudolf Gunnerman's Assignment of Talisman's Intellectual Property Rights to SulphCo

18.   In the year 1999, Rudolf Gunnerman founded GRD, Inc., which later became, and is now known as, SulphCo, Inc. (hereinafter "SulphCo"), to pursue technologies related to the removal of sulfur from crude oils and petroleum distillates.

19.   Rudolf Gunnerman is, and was at all relevant times, SulphCo's Chief Executive Officer, Chairman of the Board, and majority shareholder.

20.   Prior to the date of the Technology Transfer and Assignment Agreement, Rudolf Gunnerman had assigned to SulphCo one or more patents and patent applications that relate to the Field.

21.   On or after December 31, 2002, Rudolf Gunnerman assigned to SulphCo U.S. Patent no. 6,500,219, which concerns sulfur-depleted diesel fuels and methods of removing sulfides from liquid fossil fuels and similar technology, and which, by virtue of its relatedness to the "Field" of technology transferred to Capital Strategies (which it later transferred to Talisman), constitutes an Intellectual Property Right duly transferred to and owned by Talisman.

22.   Prior to executing the Technology Transfer and Assignment Agreement, Rudolf Gunnerman had also caused to be assigned to SulphCo at least one other patent that relates to the Field, namely, U.S. Patent no. 6,402,939, which he controlled, and thus

LAW OFFICES OF
BEESLEY, PECK & MATTEONI,
LTD.
SUITE 300
5011 MEADOWOOD MALL WAY
RENO, NV 89502
(775) 827-8844
FAX (775) 827-5922

K:\54\54739.001\plead\Complaint.DOC          - 6 -

constitutes an Intellectual Property Right duly transferred to Capital Strategies pursuant to the Technology Transfer and Assignment Agreement, and therefore is duly owned by Talisman as assignee of Capital Strategies.

23.     On information and belief, Rudolf Gunnerman has assigned to SulphCo other Intellectual Property Rights and Know-How that are duly owned by Talisman, all without Talisman's prior knowledge or permission.

24.     Such assignments to SulphCo contravene Rudolf Gunnerman's warranty in the Technology Transfer and Assignment Agreement that he had not "granted any person or entity any rights, license, sublicense or other agreement or otherwise, to use the Intellectual Property Rights."

25.     In addition, since the time that Rudolf Gunnerman executed the Technology Transfer and Assignment Agreement, he has obtained additional United States patents on technology that relates to the Field and therefore constitute transferred Intellectual Property Rights, namely, U.S. Patent nos. 6,827,844, 6,652,992, and 6,897,628.

26.     Rather than convey the rights under these patents to Talisman pursuant to his obligations under the Technology Transfer and Assignment Agreement, Rudolf Gunnerman has assigned these patents to SulphCo, all in contravention of such obligations.

27.     Further, Rudolf Gunnerman has applied for additional United States patents on technology that relates to the Field and therefore constitutes transferred Intellectual Property Rights under the Technology Transfer and Assignment Agreement, one of which is presently pending, namely, Patent Application no. 20030051988.

BEESLEY, PECK & MATTEONI, LTD
ATTORNEYS AT LAW

LAW OFFICES OF
BEESLEY, PECK & MATTEONI
LTD
SUITE 270
5011 MEADOWOOD MALL WAY
RENO   NEVADA 89502
(775) 827-8666
FAX: (775) 827-9732          K:\54\54739.001\plead\Complaint.DOC          - 7 -

28.    On information and belief, Rudolf Gunnerman has assigned, or plans to assign, to SulphCo all rights under these patent applications in violation of his obligations under the Technology Transfer and Assignment Agreement.

29.    In addition, on information and belief, Rudolf Gunnerman has assigned, or plans to assign, to SulphCo other Intellectual Property Rights, including, without limitation, corresponding foreign patents and patent applications, in violation his obligations under the Technology Transfer and Assignment Agreement.

### SulphCo's Unauthorized Possession, Custody, Control and/or Use of Talisman's Intellectual Property Rights

30.    SulphCo is exercising possession, custody and control of and, on information and belief, using, Talisman's Intellectual Property Rights for the sole and exclusive benefit of itself and Rudolf Gunnerman, to the exclusion of Talisman.

31.    In filings with the Securities and Exchange Commission and statements and releases it has published on its website, *http://www.sulphco.com*, SulphCo has stated that it owns Intellectual Property Rights transferred to Talisman and, among other things, plans to license such Rights to third parties.

32.    For instance, in August 2004, SulphCo entered into a Collaboration Agreement with ChevronTexaco Energy Technology Co., which, on information and belief, involves use and development of Talisman's Intellectual Property Rights.

33.    Neither Capital Strategies nor Talisman has transferred, licensed or assigned any Intellectual Property Rights transferred under the Technology Transfer and Assignment

LAW OFFICES OF
BEESLEY, PECK & MATTEONI
LTD.
SUITE 200
5011 MEADOWWOOD MALL WAY
RENO, NV 89502
TEL: (775) 829-8666
FAX: (775) 829-8700

K:\54-54739.001\plead\Complaint.DOC          - 8 -

BEESLEY, PECK & MATTEONI, LTD.
ATTORNEYS AT LAW

1   Agreement to SulphCo or to Rudolf Gunnerman or otherwise granted either SulphCo or
2   Gunnerman rights to use or further assign the Intellectual Property Rights.
3
4        34.    Neither Capital Strategies nor Talisman has consented to possession, custody,
5   control or use of the Intellectual Property Rights transferred under the Technology Transfer
6   and Assignment Agreement by SulphCo or by Rudolf Gunnerman.

7                                   **Count One**
8                **Declaratory Judgment—Gunnerman and SulphCo**

9        35.    Talisman incorporates and re-alleges paragraphs 1 through 34 of this
10  Complaint, as if fully set forth herein.

11       36.    Talisman seeks relief pursuant to 28 U.S.C. § 2201, as an actual case or
12  controversy exists between the parties.
13
14       37.    The Technology Transfer and Assignment Agreement, as amended, is a valid
15  and existing contract between Capital Strategies and Rudolf Gunnerman.

16       38.    All of Capital Strategies' rights under the Technology Transfer and
17  Assignment Agreement have been validly assigned to Talisman.

18       39.    Prior and subsequent to the assignment to Talisman, Capital Strategies and
19  Talisman have performed all of the terms and conditions required of them under the
20  Technology Transfer and Assignment Agreement.
21
22       40.    Pursuant to the Technology Transfer and Assignment Agreement, Talisman is
23  the sole and exclusive owner of the Intellectual Property Rights, including without limitation,
24  U.S. Patent nos. 6,500,219, 6,402,939, 6,827,844, 6,652,992, and 6,897,628, and U.S. Patent
25  Application no. 20030051988 and any corresponding foreign patents or applications.

LAW OFFICES OF
BEESLEY, PECK & MATTEONI,
LTD.
SUITE 300
5011 MEADOWOOD MALL WAY
RENO, NV 89502
775 323-1656
FAX 775 323-0720

K:\54\54739.001\plead\Complaint.DOC          - 9 -

BEESLEY, PECK & MATTEONI, LTD.
ATTORNEYS AT LAW

41.     Talisman seeks a declaration that (a) Talisman is the sole and exclusive owner of the Intellectual Property Rights, including without limitation, U.S. Patent nos. 6,500,219, 6,402,939, 6,827,844, 6,652,992, and 6,897,628, and U.S. Patent Application nos. 20030051988, and any corresponding foreign patents or applications; and (b) neither Rudolf Gunnerman nor SulphCo has any right of ownership in, or any right to use or exercise possession, custody or control of, such Intellectual Property Rights.

42.     Talisman also seeks recovery of all attorneys' fees authorized by law and by the Technology Transfer and Assignment Agreement, from Rudolf Gunnerman and SulphCo.

## Count Two
## Breach of Technology Transfer and Assignment Agreement —Gunnerman

43.     Talisman incorporates and re-alleges paragraphs 1 through 42 of this Complaint, as if fully set forth herein.

44.     The Technology Transfer and Assignment Agreement is a valid and existing contract between Capital Strategies and Rudolf Gunnerman.

45.     All of Capital Strategies' rights under the Technology Transfer and Assignment Agreement have been validly assigned to Talisman.

46.     Prior and subsequent to the assignment to Talisman, Capital Strategies and Talisman have performed all terms and conditions required of them under the Technology Transfer and Assignment Agreement.

47.     Rudolf Gunnerman has breached the Technology Transfer and Assignment Agreement by continuing to exercise ownership, custody and control over, and, on information and belief, use, the transferred Intellectual Property Rights for the benefit of himself and SulphCo to the exclusion and detriment of Talisman.

LAW OFFICES OF
BEESLEY, PECK & MATTEONI
LTD
SUITE 200
5011 MEAD OWWOOD MALL WAY
RENO, NV 89502
775.323.1601
FAX (775) 323.9726

48.    Rudolf Gunnerman has also breached his warranty in the Technology Transfer and Assignment Agreement that he had not "granted any person or entity any rights, license, sublicense or other agreement or otherwise, to use the Intellectual Property Rights," by assigning transferred Intellectual Property Rights to SulphCo.

49.    As a result of these breaches of the Technology Transfer and Assignment Agreement by Rudolf Gunnerman, Talisman has suffered damages including, without limitation, loss of use of the Intellectual Property Rights and lost profits, lost royalties, and lost business opportunity derived therefrom, to which it is entitled under the Technology Transfer and Assignment Agreement.

50.    The amount of these damages exceeds $75,000, exclusive of interest and costs, and Talisman is entitled to recover these damages, in addition to attorneys' fees authorized by law and by the Technology Transfer and Assignment Agreement, from Rudolf Gunnerman.

51.    In addition, as a result of Rudolf Gunnerman's breach, Talisman has suffered, continues to suffer, and will suffer irreparable injury for which there is no adequate remedy at law.

**Count Three**
**Bad Faith Breach of Technology Transfer and Assignment Agreement — Gunnerman**

52.    Talisman incorporates and re-alleges paragraphs 1 through 51 of this Complaint, as if fully set forth herein.

53.    The Technology Transfer and Assignment Agreement is a valid and existing contract between Capital Strategies and Rudolf Gunnerman.

54.    All of Capital Strategics' rights under the Technology Transfer and Assignment Agreement have been validly assigned to Talisman.

LAW OFFICES OF
BEESLEY, PECK & MATTEONI,
LTD
SUITE 600
5011 MEADOWOOD MALL WAY
RENO, NV 89502
(775) 827-8666
FAX (775) 827-8672

K:\54\51739.001\plead\Complaint.DOC          - 11 -

55.     Prior and subsequent to the assignment to Talisman, Capital Strategies and Talisman have performed all terms and conditions required of them under the Technology Transfer and Assignment Agreement.

56.     Rudolf Gunnerman, acting in bad faith, has breached the Technology Transfer and Assignment Agreement by continuing to exercise ownership, custody and control over, and, on information and belief, use, the transferred Intellectual Property Rights for the benefit of himself and SulphCo to the exclusion and detriment of Talisman.

57.     Rudolf Gunnerman, acting in bad faith, has also breached his warranty in the Technology Transfer and Assignment Agreement that he had had not "granted any person or entity any rights, license, sublicense or other agreement or otherwise, to use the Intellectual Property Rights," by assigning transferred Intellectual Property Rights to SulphCo.

58.     As a consequence of Rudolf Gunnerman's bad faith breach of the Technology Transfer and Assignment Agreement, Talisman has suffered damages including, without limitation, loss of use of the Intellectual Property Rights and lost profits, lost royalties, and lost business opportunity derived therefrom, to which it is entitled under the Technology Transfer and Assignment Agreement.

59.     The amount of these damages exceeds $75,000, exclusive of interest and costs, and Talisman is entitled to recover these damages, in addition to attorneys' fees authorized by law and by the Technology Transfer and Assignment Agreement, from Rudolf Gunnerman.

60.     In addition, as a result of Rudolf Gunnerman's bad faith breach, Talisman has suffered, continues to suffer, and will suffer irreparable injury for which there is no adequate remedy at law.

LAW OFFICES OF
BEESLEY, PECK & MATTEONI
LTD.
1201 S. 3rd,
5011 MEADOWOOD MALL WAY
RENO, NV 89502
(775) 827-8666
FAX (775) 827-8700

K:\54\51739.001\plead\Complaint.DOC                              - 12 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## Count Four
### Breach of Implied Contractual Duty of Good Faith and Fair Dealing—Gunnerman

61.     Talisman incorporates and re-alleges paragraphs 1 through 60 of this Complaint, as if fully set forth herein.

62.     The Technology Transfer and Assignment Agreement is a valid and existing contract between Capital Strategies and Rudolf Gunnerman

63.     All of Capital Strategies' rights under the Technology Transfer and Assignment Agreement have been validly assigned to Talisman.

64.     Rudolf Gunnerman breached the obligation of good faith and fair dealing implied in the Technology Transfer and Assignment Agreement by exercising ownership, custody and control over, and, on information and belief, use, the transferred Intellectual Property Rights for the benefit of himself and SulphCo to the exclusion and detriment of Talisman and by assigning transferred Intellectual Property Rights to SulphCo.

65.     As a consequence of Rudolf Gunnerman's breach of the implied duty of good faith and fair dealing, Talisman has suffered damages including, without limitation, loss of use of the Intellectual Property Rights and lost profits, lost royalties, and lost business opportunity derived therefrom, to which it is entitled under the Technology Transfer and Assignment Agreement.

66.     The amount of these damages exceeds $75,000, exclusive of interest and costs, and Talisman is entitled to recover these damages, in addition to attorneys' fees authorized by law and by the Technology Transfer and Assignment Agreement, from Rudolf Gunnerman.

67.   In addition, as a result of Rudolf Gunnerman's breach of the implied duty of good faith and fair dealing, Talisman has suffered, continues to suffer, and will suffer irreparable injury for which there is no adequate remedy at law.

**Count Five**
**Tortious Interference with Technology Transfer and Assignment Agreement —SulphCo**

68.   Talisman incorporates and re-alleges Paragraphs 1 through 67 of this Complaint, as if fully set forth herein.

69.   The Technology Transfer and Assignment Agreement is a valid and existing contract between Capital Strategies and Rudolf Gunnerman.

70.   All of Capital Strategies' rights under the Technology Transfer and Assignment Agreement have been validly assigned to Talisman.

71.   Prior to the assignment to Talisman, Capital Strategies and, since the assignment to Talisman, Talisman have performed all terms and conditions required of them under the Technology Transfer and Assignment Agreement.

72.   SulphCo, with knowledge of the Technology Transfer and Assignment Agreement and all terms thereof, intentionally, and without justification, caused and induced Rudolf Gunnerman to breach the Technology Transfer and Assignment Agreement and otherwise interfered with Rudolf Gunnerman's performance of its contractual obligations to Talisman under the Technology Transfer and Assignment Agreement by exercising possession, custody and control, and claiming ownership, of Talisman's Intellectual Property Rights for the sole and exclusive benefit of itself and Rudolf Gunnerman.

73.   In addition, SulphCo, with knowledge of the Technology Transfer and Assignment Agreement and all terms thereof, intentionally, and without justification, caused

LAW OFFICES OF
BEESLEY, PECK & MATTEONI,
LTD
SUITE 800
5011 MEAL SWOOD MILL WAY
RENO, NV 89502
(775) 827-8666
FAX - 755 827-8272

K:\54\54739.001\plead\Complaint.DOC           - 14 -

1   and induced Rudolf Gunnerman to breach the Technology Transfer and Assignment

2   Agreement and otherwise interfered with Rudolf Gunnerman's performance of its contractual

3   obligations to Talisman under the Technology Transfer and Assignment Agreement by, on

4   information and belief, using Talisman's Intellectual Property Rights for the sole and

5   exclusive benefit of itself and Rudolf Gunnerman.

6

7       74.    As a result of these actions of SulphCo and the resulting breach of the

8   Technology Transfer and Assignment Agreement by Rudolf Gunnerman, Talisman has

9   suffered damages including, without limitation, loss of use of the Intellectual Property Rights

10  and lost profits, lost royalties, and lost business opportunity derived therefrom, to which it is

11  entitled under the Technology Transfer and Assignment Agreement.

12

13      75.    The amount of these damages exceeds $75,000, exclusive of interest and costs,

14  and Talisman is entitled to recover these damages, in addition to attorneys' fees, from

15  SulphCo.

16

17      76.    In addition, as a result of SulphCo's tortious interference with the Technology

18  Transfer and Assignment Agreement, Talisman has suffered, continues to suffer, and will

19  suffer irreparable injury for which there is no adequate remedy at law.

20                              **Count Six**
21              **Conversion—Gunnerman and SulphCo**

22      77.    Talisman incorporates and re-alleges paragraphs 1 through 76 of this

23  Complaint, as if fully set forth herein.

24      78.    The Intellectual Property Rights are the sole and exclusive property of

25  Talisman, and Talisman has the right to possess the property subject to any applicable

licenses.

LAW OFFICES OF
BEESLEY, PECK & MATTRONI,
LTD
*OFF & RP*
5011 MEADOWOOD MALL WAY
RENO NV 89502
-775-323-5868
FAX (775) 829-070 2

K:\54\54739.001\plead\Complaint.DOC                - 15 -

BEESLEY, PECK & MATTRONI, LTD.
ATTORNEYS AT LAW

79. Rudolf Gunnerman and SulphCo have wrongfully and without justification exerted dominion over the Intellectual Property Rights, in denial of and inconsistent with Talisman's right.

80. As a result of Rudolf Gunnerman's and SulphCo's conversion, Talisman has suffered damages including, without limitation, loss of use of the Intellectual Property Rights and lost profits, lost royalties, and lost business opportunity derived therefrom, to which it is entitled under the Technology Transfer and Assignment Agreement.

81. The amount of these damages exceeds $75,000, exclusive of interest and costs, and Talisman is entitled to recover these damages, in addition to attorneys' fees, from Rudolf Gunnerman and SulphCo.

82. In addition, as a result of Rudolf Gunnerman's and SulphCo's conversion, Talisman has suffered, continues to suffer, and will suffer irreparable injury for which there is no adequate remedy at law.

### Count Seven
### Unjust Enrichment/Constructive Trust—Gunnerman and SulphCo

83. Talisman incorporates and re-alleges paragraphs 1 through 82 of this Complaint, as if fully set forth herein.

84. Talisman avers that Rudolf Gunnerman and/or SulphCo are liable for unjust enrichment.

85. Rudolf Gunnerman and/or SulphCo have unjustly retained benefits to the loss of Talisman, as well as money or property belonging to Talisman, in contravention of the fundamental principles of justice or equity and good conscience.

LAW OFFICES OF
BEESLEY PECK & MATTEONI
LTD
SUITE 200
5011 MEADOWOOD MALL WAY
RENO, NV 89502
775-827-8666
FAX (775) 6274-332

K:\54\54739\001\plead\Complaint.DOC     - 16 -

86.  Rudolf Gunnerman and/or SulphCo have been enriched through their unauthorized use of the Intellectual Property Rights and have appreciated, accepted and retained such benefit for their exclusive use.

87.  Talisman has been impoverished through Rudolf Gunnerman's and/or SulphCo's unauthorized use of the Intellectual Property Rights.

88.  There is a relationship between the enrichment and the impoverishment, and there is no justification or valid cause for Defendants' enrichment and Talisman's impoverishment.

89.  In the event that Talisman does not recover against Rudolf Gunnerman and/or SulphCo at law, there is no other remedy at law available to it.

90.  As a result of Rudolf Gunnerman's and SulphCo's unjust enrichment, Talisman Talisman hereby requests that the Court enter an order placing the Intellectual Property Rights wrongfully usurped from Talisman, as well as any revenues related to the Intellectual Property Rights, received by Rudolf Gunnerman or SulphCo, in a constructive trust for the benefit of Talisman.

WHEREFORE, Talisman prays that its Complaint be deemed good and sufficient, and that, after due proceedings, the Court enter judgment in its favor as follows:

(a) declaring that (i) Talisman is the sole and exclusive owner of the Intellectual Property Rights, including without limitation, U.S. Patent nos. 6,500,219, 6,402,939, 6,827,844, 6,652,992, and 6,897,628, and U.S. Patent Application no. 20030051988, and any corresponding foreign patents or applications; and (ii) neither Rudolf W. Gunnerman nor SulphCo, Inc. has any right of ownership in, or any right to use or exercise possession, custody or control of, such Intellectual Property Rights.

LAW OFFICES OF
BEESLEY, PECK & MATTEONI, LTD
5011 MEADOWOOD MALL WAY
RENO, NV 89502
(775) 827-8666
FAX (775) 827-8720

K:\54\54739-001\plead\Complaint.DOC

- 17 -

BEESLEY, PECK & MATTEONI, LTD.
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(b) against Rudolf W. Gunnerman for any and all damages sustained by Talisman as a result of Gunnerman's breach and/or bad faith breach of the Technology Transfer and Assignment Agreement;

(c) against Rudolf W. Gunnerman for any and all damages sustained by Talisman as a result of Gunnerman's breach of the duty of good faith and fair dealing;

(d) against SulphCo, Inc. for any and all damages sustained by Talisman as a result of its tortious interference with the Technology Transfer and Assignment Agreement;

(e) against Rudolf W. Gunnerman and SulphCo, Inc., jointly and severally, for any and all damages sustained by Talisman as a result of their unauthorized conversion of Talisman's property;

(f) against Rudolf W. Gunnerman and SulphCo, Inc., jointly and severally, granting a constructive trust over the Intellectual Property Rights and all revenues derived therefrom, as a result of their unjust enrichment;

(g) against Rudolf W. Gunnerman and SulphCo, Inc., jointly and severally, for punitive damages judgment interest, as allowed by law;

(h) against Rudolf W. Gunnerman and SulphCo, Inc., jointly and severally, for pre- and prost-judgment interest, as allowed by law;

(i) against Rudolf W. Gunnerman and SulphCo, Inc., jointly and severally, for all of Talisman's attorney's fees, costs, and expenses incurred in this action; and

///

///

///

///

///

///

///

///

LAW OFFICES OF
BEESLEY PECK & MATTEONI
LTD
5011 MEAD WOOD MALL WAY
RENO, NV 89502
(775) 827-8666
FAX (775) 827-8722

k:\5d\54739.001\plead\Complaint.DOC          - 18 -

BEESLEY, PECK & MATTEONI, LTD.
ATTORNEYS AT LAW

(j)  for all other legal and equitable relief to which Talisman may be entitled.

Respectfully submitted this _9th_ day of June, 2005.

BEESLEY, PECK & MATTEONI, LTD.

By:     BRUCE T. BEESLEY #1164
TRICIA M. DARBY #7956
5011 Meadowood Mall Way, Ste. 300
Reno, NV 89502
Telephone: 775-827-8666
Fax: 775-827-8722

and

ANDREW R. LEE (LA #21196)
*Pro hac vice admission pending*
AIMEE M. QUIRK (LA #27045)
*Pro hac vice admission pending*
EMILY E. EAGAN (LA #29166)
*Pro hac vice admission pending*
Jones, Walker, Waechter, Poitevent,
   Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8664
Facsimile: (504) 589-8664

Attorneys for Talisman Capital Talon Fund, Ltd.

## CERTIFICATE OF SERVICE

I, Seth Reidenberg, hereby certify that on May 15, 2006 a copy of the foregoing document was caused to be filed and served pursuant to the District Court rules regarding filing procedures upon the following counsel of record:

Via Hand Delivery
Kurt Heyman, Esquire
Proctor and Heyman LLP
1116 West Street
Wilmington, DE 19801

Via email
T. Michael Guiffre, Esquire
mguiffre@pattonboggs.com
Patton Boggs, LLP
2550 M. Street, NW
Washington, D.C. 20037

_____
Seth Reidenberg (No. 3657)